IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

ABDULHAKIM MUHAMMAD
ADC #150550                                                                                              PLAINTIFF

v.                                          Case No. 5:15-cv-130 KGB/PSH

MARK WHEELER, *et al.*                                                                    DEFENDANTS

## ORDER

Plaintiff Abdulhakim Muhammad is an inmate with the Arkansas Department of Correction ("ADC"). He is a Sunni Muslim. Mr. Muhammad claims that the meal plans offered by the ADC violate the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C.A. §§ 2000cc, *et seq.*, as well as the First and Fourteenth Amendments to the United States Constitution. Mr. Muhammad is seeking injunctive relief from defendants Mark Wheeler, the Religious Service Administrator for the ADC; Randy Watson, Warden of the Varner Unit, which is where Mr. Muhammad is currently incarcerated; and Wendy Kelley, Director of the ADC (Dkt. No. 2, at 4).

Both Mr. Muhammad and the defendants have filed motions for summary judgment (Dkt. Nos. 23, 43). On January 19, 2016, United States Magistrate Judge Patricia S. Harris issued a Proposed Findings and Recommended Disposition ("RD"), concluding that Mr. Muhammad's motion for summary judgment should be denied, the defendants' motion for summary judgment should be granted, and Mr. Muhammad's complaint should be dismissed with prejudice (Dkt. No. 60, at 6). Mr. Muhammad filed timely objections to the RD (Dkt. No. 61). After reviewing the RD, reviewing the objections received, and conducting a *de novo* review of the record in this case, the Court adopts in part and declines to adopt in part the RD (Dkt. No. 61). The Court denies both motions for summary judgment (Dkt. No. 23, 43).

I. **Background**

As a Sunni Muslim, Mr. Muhammad believes that he must maintain a halal diet (Dkt. No. 43-7, at 3). Halal means food that is "lawful" or "wholesome" (Dkt. No. 47, at 1; No. 43-2, at 1). Nuts, fruits, vegetables, legumes, most types of fish, certain breads, and milk qualify as halal, as does the meat from herbivorous animals that have been "slaughtered in the name of God" (Dkt. No. 43-2, at 1; No. 43-7, at 12-13). According to Mr. Muhammad, for meat to be halal:

> The animal must be slaughtered by a Muslim (or a Jew or Christian). The animal should be put down on the ground and its throat should be slit with a very sharp knife to make sure that the 3 main blood vessels are cut. While cutting the throat of the animal, the person must pronounce the name of Allah or recite a blessing which contains the name of Allah, such as "Bismillah Allahu Akbar."

(Dkt. No. 26, at 11). Food that is not halal is haram, which Mr. Muhammad believes is forbidden. According to Mr. Muhammad, an otherwise halal diet that does not include halal meat is haram (Dkt. No. 26, at 35).[1]

Mr. Muhammad is incarcerated at the Varner Super Max Unit of the ADC (Dkt. No. 2, at 5). Since moving into the Varner Unit, Mr. Muhammad has made multiple requests to be placed on what he called a halal meal plan (Dkt. No. 2, at 16; No. 26, at 1). On each occasion, he was told that he could select from one of several plans that the defendants claim qualify as halal: common fare, which was "developed with the assistance of a registered dietician and a chaplain," as well as pork-free, vegetarian, and vegan options (Dkt. No. 45, at 2). Mr. Muhammad was also

---

[1] Mr. Muhammad's complaint and amended complaint are ambiguous on this point. In both, he never specifically asserts that he must consume halal meat, though he repeatedly claims that none of the meal options offered to him were halal while focusing on the ADC's refusal to offer halal meat (Dkt. No. 20, at 2-4). Mr. Muhammad clarifies that his religious beliefs require the consumption of halal meat in his statement of undisputed facts and in his response to defendants' cross motion for summary judgment (Dkt. No. 26, at 35; No. 46, ¶ 11). Reading the amended complaint broadly, as the Court is required to do, along with his later clarification, the Court finds that Mr. Muhammad did claim in his amended complaint that his religious beliefs mandate the consumption of halal meat and that the ADC's meal policy violates his rights under the Constitution and the RLUIPA. *Reid v. Griffin*, 808 F.3d 1191, 1194 (8th Cir. 2015).

informed that he could purchase halal items from the ADC's commissary. Of the 27 halal items available at the commissary, two are fish: tuna and jack mackerel (Dkt. No. 47, at 2).

Mr. Muhammad believes that none of the regular meal plans qualify as halal. He claims that the pork-free and common fare plans contain items or ingredients that are haram (Dkt. No. 47, at 4). While he does not dispute defendants' claim that the vegetarian and vegan plans do not contain food that is haram, he claims that these plans are not halal because they do not include halal meat (Dkt. No. 45, at 2; No. 47, at 4).[3] The ADC does not provide halal meat in its regular food service (Dkt. No. 45, at 2).[4] Mr. Muhammad asserts that, "being a vegetarian, vegan or made to eat artifical [sic] meat is against my religious beliefs" (Dkt. No. 26, at 35). In a declaration, he provides the basis for this belief. According to Mr. Muhammad, the Prophet Muhammad ate meat (Dkt. No. 26, at 35). Sunni Muslims follow the example of the Prophet, meaning Mr. Muhammad believes that "Muslims are urged and are commanded to eat meat from the cattle" (Dkt. No. 26, at 35).

Mr. Muhammad argues that the availability of tuna and jack mackerel for purchase at the ADC commissary does not satisfy his religious needs because he is indigent (Dkt. No. 47, at 7). Mr. Wheeler, Mr. Watson, and Ms. Kelley dispute Mr. Muhammad's claims about his financial

---

[3] In their statement of facts in support of their motion for summary judgment, Mr. Wheeler, Mr. Watson, and Ms. Kelley claim that "[t]he ADC provides halal foods in its regular food service except for halal meat. It provides inmates with a choice between a pork-free, vegetarian, vegan, or a common fare meal plan" (Dkt. No. 45, at 2). In a declaration attached to his counterstatements of material facts, Mr. Muhammad contests Mr. Wheeler, Mr. Watson, and Ms. Kelley's assertion regarding the pork-free and common fare plans, but he does not claim that the vegetarian and vegan plans have been contaminated with or contain haram food (Dkt. No. 47, at 4).

[4] According to Mr. Muhammad, the ADC offers three entrees as part of its non-pork diet plan that he considers to be halal: tuna casserole, jack mackerel casserole, and jack mackerel patties (Dkt. No. 47, at 2). It is unclear whether serving fish would satisfy his asserted religious needs. At points, he argues that a pescatarian meal plan would suffice, while in other filings he claims that a halal diet requires the properly scarified meat of an herbivorous animal (Dkt. Nos. 47, at 1; 26, at 35).

condition (Dkt. No. 53, at 4). Responding to their claims, Mr. Muhammad submits a copy of his inmate bank account, indicating that he had no money available to him as of September 25, 2015, with no funds on hold or pending (Dkt. No. 47, at 5).

Mr. Muhammad also claims that the meal plans classified by the ADC as halal are nutritionally insufficient. Mr. Muhammad was enrolled in the vegetarian diet plan for a period of time, and he appears to have been enrolled in some of the other meal plans as well, as he criticizes their quality and nutritional value (Dkt. No. 26, at 1; No. 2, at 14-15). Mr. Muhammad claims that he lost 29 pounds while on one of these meal plans (Dkt. No. 47, at 2). Mr. Wheeler, Mr. Watson, and Ms. Kelley claim, and Mr. Muhammad does not dispute, that all of the ADC's meal plans are developed using the United States Department of Agriculture ("USDA") dietary guidelines with the assistance of a regular dietician (Dkt. No. 45, at 2-3). They also provide a chart of Mr. Muhammad's vital signs. On July 26, 2011, the day after Mr. Muhammad entered the Varner Unit, he weighed 198 pounds (Dkt. No. 43-9, at 2). The most recent entry, September 10, 2015, Mr. Muhammad weighed 210 pounds (Dkt. No. 43-9, at 1). According to the chart, Mr. Muhammad's weight has fluctuated throughout his imprisonment.

## II.    Standard of Review

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact in dispute and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Holloway v.*

4

*Pigman*, 884 F.2d 365, 366 (8th Cir. 1989). However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### III. Argument

Mr. Muhammad argues that the meal options offered by the ADC place a substantial burden on the exercise of his religious beliefs in three ways: (1) the alternative plans are nutritionally inadequate; (2) none of the meal plans are halal because they do not include halal meat; and (3) for a period of time, the ADC provided kosher meals to Jewish inmates, but it refuses to provide halal meals to Muslim inmates today (Dkt. No. 24, at 2-4). The Court approves and adopts the RD regarding Mr. Muhammad's third argument based on the past availability of kosher meals (Dkt. No. 60, at 5).

#### A. Nutritional Adequacy Of Meal Plans

The Court also approves and adopts the RD regarding the alleged nutritional inadequacy of the ADC's meal plans. In their motion for summary judgment, Mr. Wheeler, Mr. Watson, and Ms. Kelley argue that the meal plans offered to Mr. Muhammad are nutritionally adequate because they "are developed with the assistance of a registered dietician . . . using the USDA dietary guidelines, which are widely accepted as containing the proper recommendations to meet the nutritional needs of most Americans" (Dkt. No. 44, at 9). They attach a copy of the

guidelines to their motion, along with the affidavits of Debra Goldman, the ADC's dietician consultant, and Kay Skillen, the ADC's food service administrator (Dkt. Nos. 4, 5, 8). In response to Mr. Muhammad's claim that the vegetarian plan does not contain sufficient protein, Ms. Goldman states that the "vegetarian meal plan generally contains between 80-100 grams of protein per day," which exceeds the USDA Guidelines recommendation of 56 grams of protein per day for people of Mr. Muhammad's age (Dkt. No. 43-5, at 2; No. 43-8, at 89). In his response to the defendants' motion, Mr. Muhammad does not dispute this evidence or respond to it in any way (Dkt. No. 46). For this reason, as well as the reasons provided in the RD, the Court finds that Mr. Muhammad failed to present sufficient evidence that would permit a reasonable jury to return a verdict in his favor regarding this issue. *Wilson v. Miller*, 86 F. Supp. 3d 1027, 1033 (D. Minn. 2015).

### B. Halal Meat

The crux of Mr. Muhammad's complaint, and his objections to the RD, is that the ADC's refusal to offer halal meat violates his rights under the Constitution and the RLUIPA (Dkt. No. 2, at 5; No. 61, ¶ 1). Mr. Muhammad believes that, as a Sunni Muslim, he is commanded to eat "meat from the cattle" that is properly slaughtered (Dkt. No. 26, at 1). There is no dispute that the ADC does not offer the meat of herbivorous animals as part of its regular meal plan, and it appears from the record before the Court that no such meat is offered for sale in the commissary (Dkt. No. 56, at 2-3).[5] Therefore, even if the meal plans offered by the ADC are otherwise halal, in that they are uncontaminated and only contain items and ingredients that are halal, Mr. Muhammad believes the plans are haram because they do not include halal meat.

---

[5] Again, it is unclear whether halal fish options would satisfy Mr. Muhammad's religious needs.

Mr. Muhammad is only seeking injunctive relief in this action (Dkt. No. 2, at 4). The standard for injunctive relief under the RLUIPA is more favorable to Mr. Muhammad than the standard for his constitutional claims. Accordingly, the Court will limit its analysis to Mr. Muhammad's RLUIPA claim. *See Ajala v. West*, 106 F. Supp. 3d 976, 989 (W.D. Wis. 2015) (determining that because the plaintiff could go forward on his request for injunctive and declaratory relief under RLUIPA, an easier standard for plaintiff to meet than that applied to his constitutional claims, it was not necessary to decide whether plaintiff was entitled to declaratory or injunctive relief under the free exercise clause, the establishment clause, or the equal protection clause); *see also Schlemm v. Wall*, 784 F.3d 362, 363 (7th Cir. 2015).

The RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1. Mr. Muhammad bears the initial burden of showing: (1) that the ADC's refusal to provide halal meat "implicates his religious exercise" and (2) that its refusal "substantially burdened that exercise of religion." *Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015). If Mr. Muhammad makes the required showing, the burden shifts to Mr. Wheeler, Mr. Watson, and Ms. Kelley, who must show that the policy "furthers a compelling government interest and there are no less restrictive means of furthering that interest." *Native Am. Council of Tribes v. Weber*, 750 F.3d 742, 749 (8th Cir. 2014).

### 1.     Mr. Muhammad's Burden

The RLUIPA broadly defines "religious exercise" as including "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5. While this definition is broad, "a prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation." *Hobbs*, 135 S. Ct. at 862. Therefore, Mr. Muhammad has the burden of establishing that his request for a halal diet that includes halal meat is based on a sincerely held religious belief. To satisfy this burden, Mr. Muhammad declares that his dietary needs are grounded in his interpretation of the Quran and other Muslim teachings, and he offers exhibits providing the basis for his beliefs (Dkt. No. 35; No. 26, at 35).

In their response to Mr. Muhammad's motion for summary judgment and in their cross-motion for summary judgment, Mr. Wheeler, Mr. Watson, and Ms. Kelley concede that Mr. Muhammad's request for a halal meal plan that includes halal meat is sincerely based on his religious beliefs (Dkt. No. 41, at 1; No. 44, at 5). They reverse this position in their reply to plaintiff's response to cross-motion for summary judgment (Dkt. No. 52). However, as a general rule, courts in the Eighth Circuit will not consider arguments raised for the first time in a reply brief. *Barham v. Reliance Standard Life Ins. Co.,* 441 F.3d 581, 584 (8th Cir.2006); *Armstrong v. Am. Pallet Leasing Inc.,* 678 F.Supp.2d 827, 872 (N.D.Iowa 2009). Therefore, at this stage of the proceedings, the Court finds that Mr. Muhammad has met his first burden under the RLUIPA.

Mr. Muhammad also must show that the ADC's decision not to provide halal meat in its regular food plan places a substantial burden on his religious exercise. Relying on *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807 (8th Cir. 2008), Mr. Wheeler, Mr. Watson, and Ms. Kelley argue that Mr. Muhammad failed to meet this burden. In *Patel*, the Eighth Circuit Court of

Appeals appeared to find that, for a prison regulation to burden substantially a prisoner's free exercise of religion, it must:

> [S]ignificantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion.

*Patel*, 515 F.3d at 813 (quoting *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 988 (8th Cir.2004)). Mr. Wheeler, Mr. Watson, and Ms. Kelley use this understanding of what constitutes a substantial burden in their arguments supporting their cross motion for summary judgment (Dkt. No. 44, at 6). However, in a footnote, the *Patel* court noted that "portions of this definition requiring religious beliefs to be a 'central tenet' or 'fundamental' may not apply to a RLUIPA claim" because of RLUIPA's broad definition of religious exercise. *Id.* at 813 n.7. As the Eighth Circuit Court of Appeals explained elsewhere, "this type of inquiry into what is or is not central to a particular religion has no place in an [sic] RLUIPA analysis." *Weber*, 750 F.3d at 750.

This Court will restate the Eighth Circuit's determination of what constitutes a substantial burden under the RLUIPA:  the regulation must significantly inhibit or constrain *religious expression*; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in *religious expression*.  This understanding of what constitutes a substantial burden for the purposes of the RLUIPA is consistent with the Supreme Court's recent decision in *Holt v. Hobbs*, where the Court found that the ADC's policy on facial hair violated the RLUIPA because it prevented the plaintiff from growing a ½–inch beard in accordance with his religious beliefs. *Hobbs*, 135 S. Ct. at 867. In *Hobbs*, the Court found that the plaintiff, a Muslim prisoner who believed that his faith required him to grow facial hair, "easily satisfied" his burden of showing that the ADC's grooming

9

policy, which prohibited facial hair without a religious exception, "substantially burdened that exercise of religion." *Id.* at 862. The Court's logic was straightforward: "[t]he Department's grooming policy requires petitioner to shave his beard and thus to 'engage in conduct that seriously violates [his] religious beliefs.' If petitioner contravenes that policy and grows his beard, he will face serious disciplinary action. Because the grooming policy puts petitioner to this choice, it substantially burdens his religious exercise." *Id.* Put differently, once the Court found that the prisoner's desire to grow facial hair constituted religious exercise under RLUIPA, the question of whether the ADC's no-facial-hair, no-religious-exception grooming policy qualified as a substantial burden did not require rigorous analysis, because the policy completely prohibited the prisoner from exercising that religious belief.

Mr. Wheeler, Mr. Watson, and Ms. Kelley offer several reasons for why the ADC's decision not to offer halal meat does not place a substantial burden on Mr. Muhammad's religious exercise. First, they list all of the religious accommodations currently provided to Mr. Muhammad (Dkt. No. 44, at 6-7). This argument is misplaced. While "the availability of alternative means of practicing religion is a relevant consideration" regarding First Amendment claims, it is not relevant to claims under the RLUIPA. *Hobbs*, 135 S. Ct. at 862. Therefore, the Court declines to consider this argument in the context of Mr. Muhammad's RLUIPA claim.

Next, they argue that Mr. Muhammad has not demonstrated that the meal policy places a substantial burden on his religious exercise because it is undisputed that the vegetarian and vegan meal plans are halal, in that they do not contain food that is haram, and that "[c]ourts have held that a lack of access to halal *meat* does not constitute a substantial burden to the exercise of religion" (Dkt. No. 44, at 7) (emphasis added). This argument also fails. In *Patel*, the only decision cited by Mr. Wheeler, Mr. Watson, and Ms. Kelley in support of this argument that is

binding precedent on this Court, the Eighth Circuit did not rule that the denial of halal meat did not constitute a substantial burden under the RLUIPA. In fact, the Eighth Circuit in *Patel* specifically noted that, while "[o]ther courts have concluded that a lack of access to *halal* meat does not constitute a substantial burden under RLUIPA," that issue was not before the court because Mr. Patel sought "a *halal* diet consisting of either *halal* meat or *halal* vegetarian entrées, not just *halal* meat." *Patel*, 515 F.3d at 817 (emphasis in original).

The other decisions cited by Mr. Wheeler, Mr. Watson, and Ms. Kelley, both from the Ninth Circuit Court of Appeals, are unpersuasive. In *Boyd v. Lehman*, the United States District Court of the Western District of Washington based its finding that the denial of halal meat did not pose a substantial burden on the prisoner's religious exercise in part on the same "religious alternatives" argument raised by Mr. Wheeler, Mr. Watson, and Ms. Kelley in this case, which is similar to if not the exact same as the argument the Supreme Court rejected in *Hobbs*. *Boyd v. Lehman*, No. C05-0020-JLR, 2006 WL 1442201, at *10 (W.D. Wash. May 19, 2006) ("This is particularly so given that defendants make a significant effort to provide Muslim inmates such as plaintiff a variety of other ways in which to exercise their religious beliefs as well."). In *Watkins v. Shabazz*, the Ninth Circuit found that the denial of halal meat "did not substantially burden the free exercise of [the prisoner's] religion in violation of RLUIPA because [the prison] gave him two alternatives to eating non-Halal meat: to eat the nutritionally equivalent meat substitute provided by the prison, or to find an outside religious organization to contract with the prison to provide Halal meat." *Watkins v. Shabazz*, 180 F. App'x 773, 775 (9th Cir. 2006). These alternatives do not resolve the issue presented in this case. While Mr. Muhammad raises concerns regarding the nutritional quality of the meal plans offered to him, his core concern is rooted in his belief that he is commanded to eat halal meat, an option not available to him under

11

the ADC's meal policy. He specifically believes that eating artificial meat as a substitute for halal meat would violate a tenant of his Muslim faith (Dkt. No. 26, at 35). Regarding the Ninth Circuit's second alternative, that the prisoner could find an outside religious organization to contract with the prison to provide halal meat, it is unclear if that is an option in this case. This Court finds that none of the three cases cited by defendants presents a compelling reason to find as a matter of law that the ADC's meat policy at issue here does not place a substantial burden on Mr. Muhammad's religious exercise under the RLUIPA.

Finally, Mr. Wheeler, Mr. Watson, and Ms. Kelley argue that the ADC's policy of not providing halal meats does not pose a substantial burden on Mr. Muhammad's religious exercise because he can purchase halal meat in the commissary (Dkt. No. 44, at 10-11). The Court rejects this argument for two reasons. Most importantly, while the commissary offers halal fish items, none of the items offered in the commissary are halal meat from herbivorous animals (Dkt. No. 56, at 2-3). The record is unclear as to whether Mr. Muhammad's religious needs would be satisfied by making halal fish available to him; at times he claims that he must consume meat from herbivorous animals, while at others he claims he would be satisfied with a pescatarian diet (Dkt. Nos. 26, 54). The Court is not inclined to grant summary judgment with this issue unresolved. However, even if the fish options available in commissary would satisfy Mr. Muhammad's religious needs, the dispute over whether Mr. Muhammad has the means to purchase these items precludes summary judgment. *See Tatum v. Meisner*, No. 13-CV-44-WMC, 2016 WL 323682, at *7 (W.D. Wis. Jan. 26, 2016) ("[W]hile inmates, perhaps even Tatum (though defendants provide no evidence of Tatum's canteen purchases), may well rely on the commissary or canteen to supplement their diets, defendants have not established as a

realistic option under RLUIPA unless (1) funding for purchases is offered by the institution for those who cannot otherwise afford it; *and* (2) the canteen contains appropriate food options.").

The Court concludes that it cannot, as a matter of law, find that the ADC's meal policy does not place a substantial burden on Mr. Muhammad's religious exercise. In light of the ambiguity regarding Mr. Muhammad's religious view of and potential satisfaction with a pescatarian diet, and the dispute over whether he has sufficient financial resources to purchase halal fish from the commissary even if a pescatarian diet otherwise presents an option under RLUIPA, the Court also cannot find, as a matter of law, that the ADC's meal policy places a substantial burden on Mr. Muhammad's religious exercise. Therefore, the Court denies both Mr. Muhammad's motion for summary judgment and Mr. Wheeler, Mr. Watson, and Ms. Kelley's cross motion for summary judgment (Dkt. Nos. 23; 43). The Court declines to adopt Magistrate Judge Harris's RD to the extent that it finds that the ADC's meal policy does not place a substantial burden on Mr. Muhammad's religious exercise (Dkt. No. 60).

### 2. Mr. Wheeler, Mr. Watson, And Ms. Kelley's Burden

The Court will briefly address Mr. Wheeler, Mr. Watson, and Ms. Kelley's burden under the RLUIPA. If Mr. Muhammad is able to demonstrate that the ADC's meal policy places a substantial burden on his religious exercise, the burden shifts to Mr. Wheeler, Mr. Watson, and Ms. Kelley to show that the policy: "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1. Mr. Wheeler, Mr. Watson, and Ms. Kelley assert that the decision to offer "pork-free, vegetarian, vegan, and common fare meal plans furthers compelling government interests of accommodating the religious dietary needs of inmates in a simplified, cost-effective manner while maintaining order, security, and discipline" (Dkt. No. 44, at 20). They claim that

13

offering halal meat would be extremely cost prohibitive, would require additional administrative and food preparation time and effort, would potentially require obtaining a new food vendor that carries halal products, and "may threaten security and discipline by provoking jealousy amongst the inmates" (Dkt. No. 44, at 4, 20, 21). They claim that the current meal policy provides the "least restrictive means of furthering these compelling interests− by providing inmates with a choice between pork-free, vegetarian, vegan, and common fare meal plans. Indeed, as Mr. Muhammad testified, the vegetarian plan is halal, and he is able to purchase halal meat from the commissary" (Dkt. No. 44, at 21).

These arguments contain the same defect as Mr. Wheeler, Mr. Watson, and Ms. Kelley's substantial burden argument: they fail to account for the Supreme Court's decision in *Holt v. Hobbs*. In *Hobbs*, the ADC similarly argued that the policy at issue represented "the least restrictive means of furthering a 'broadly formulated interes[t],' namely, the Department's compelling interest in prison safety and security." *Hobbs*, 135 S. Ct. at 863 (internal citation omitted). The Court found that this argument failed to satisfy the ADC's burden under the RLUIPA because the "RLUIPA . . . contemplates a 'more focused' inquiry and 'requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person'− the particular claimant whose sincere exercise of religion is being substantially burdened.'" *Id.* (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2779 (2014)). To analyze properly a RLUIPA claim, the Court must "'scrutiniz[e] the asserted harm of granting specific exemptions to particular religious claimants' and 'to look to the marginal interest in enforcing' the challenged government action in that particular context." *Id.* In *Hobbs*, that meant "the enforcement of the Department's policy to prevent petitioner from

growing a ½–inch beard." *Id.* In this case, it means the enforcement of the ADC or Department's policy to prevent Mr. Muhammad from eating halal meat.

It is certainly conceivable that providing halal meat to Mr. Muhammad would increase security concerns and require considerable resources to the extent that deciding not to provide it at all furthers a compelling government interest. However, Mr. Wheeler, Mr. Watson, and Ms. Kelley fail to make properly that argument in their cross motion for summary judgment. For example, in support of their cost argument, they claim that changing their policy would incur an increase of "over $9,600 for one serving of meat" and that "depending on which meal plan an inmate is on, meat is generally served three times per day" (Dkt. No. 44, at 2). They calculate this substantial figure by multiplying the difference in cost between halal meat and regular meat by 16,020, the total number of inmates housed by the ADC. This is precisely the type of generalized argument that is not allowed under the RLUIPA. The proper focused inquiry under the RLUIPA is whether denying halal meat to Mr. Muhammad, not all ADC inmates, furthers a compelling government interest.

Even if Mr. Wheeler, Mr. Watson, and Ms. Kelley successfully demonstrated that completely denying Mr. Muhammad access to halal meat furthers a compelling government interest, they fail to show how their no-halal-meat policy is the least restrictive means of serving that interest. "'The least-restrictive-means standard is exceptionally demanding,' and it requires the government to 'sho[w] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y].'" *Hobbs*, 135 S. Ct. at 864 (quoting *Hobby Lobby*, 134 S. Ct. at 2779). "'[I]f a less restrictive means is available for the Government to achieve its goals, the Government must use it.'" *Id.* (quoting *United States v. Playboy Entertainment Group, Inc.,* 529 U.S. 803, 815 (2000)). In their cross

motion for summary judgment, Mr. Wheeler, Mr. Watson, and Ms. Kelley fail to offer anything more than a conclusory statement that their meal plan options are the least restrictive means of furthering their compelling government interests (Dkt. No. 44, at 21). They fail to account for rather obvious, less restrictive policies. For example, nothing in the record indicates how often halal meat would need to be served to satisfy Mr. Muhammad's religious needs. Does Mr. Muhammad require three servings of meat a day or one serving a year? They also fail to respond to Mr. Muhammad's proposed compromise – a pescatarian meal plan that combines the three halal fish items already served in the common fare plan[6] with the vegetarian plan (Dkt. No. 54). It is unclear to the Court whether this plan fits within Mr. Muhammad's own beliefs regarding a halal diet, but if he claims that offering a pescatarian meal plan would no longer place a substantial burden upon his religious exercise, Mr. Wheeler, Mr. Watson, and Ms. Kelley must show how refusing to provide such a plan furthers a compelling government interest and is the least restrictive means of doing so.

---

[6] Mr. Muhammad claims that the common fare plan contains items that are haram, which is why it is an unacceptable option for him.

## IV.     Conclusion

The Court adopts in part and declines to adopt in part the RD (Dkt. No. 60).  The Court adopts the RD as to Mr. Muhammad's arguments regarding the ADC's past practice of offering kosher meals and the alleged nutritional inadequacy of the ADC's meal plans.  The Court declines to adopt the RD to the extent that the RD proposes this Court find as a matter of law that the ADC's meal policy does not place a substantial burden on Mr. Mohammad's religious exercise under the RLUIPA.  The Court denies Mr. Muhammad's motion for summary judgment and Mr. Wheeler, Mr. Watson, and Ms. Kelley's motion for cross summary judgment (Dkt. Nos. 23; 43).

So ordered this 22nd day of March, 2016.

*Kristine G. Baker*
Kristine G. Baker
United States District Judge